BERT ARMBRUSTER ET AL., APPELLANTS, V. STANTON-PILGER DRAINAGE DISTRICT, APPELLEE.

86 N. W. 2d 56

Filed November 15, 1957. No. 34251.

460

*R. M. Mueting* and *R. J. Shurtleff*, for appellants.

*Thomas L. Grady*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

YEAGER, J.

This action as originally instituted was for mandatory injunction by Bert Armbruster and Irene Arm-

bruster, husband and wife, and joint owners of a half section of land in Stanton County, Nebraska, plaintiffs and appellants herein, against Stanton-Pilger Drainage District, defendant and appellee. Later an amended and supplemental petition was filed. By this petition the plaintiffs renewed their application for mandatory injunction and in addition sought a judgment for damages. Issues were joined and a trial was had to the court. At the conclusion of the evidence of plaintiffs, on motion of the defendant, the petition of plaintiffs was dismissed. A motion for new trial was filed by plaintiffs which was overruled. From the order overruling the motion for new trial and the decree dismissing the action the plaintiffs have appealed.

The amended and supplemental petition embraces all of the essential features of the original petition with additions, hence for the purpose of this opinion reference will be made to it as the petition.

The factual situation upon which the determination depends substantially declared by the petition and disclosed by plaintiffs' evidence is that during, prior, and subsequent to 1950 and 1951, the plaintiffs were the owners of the north half of Section 24, Township 23 North, Range 2 East of the 6th P.M., in Stanton County, Nebraska; that the land was used for agricultural purposes and on it were barns, sheds, feeding yards, fences, and residence buildings; that about 200 acres were irrigated and highly productive; that prior to 1950 and 1951 the Elkhorn River extended from west to east in loops or in a meandering course about ½ mile to the north of this land; that a stream known as Cedar Creek entered plaintiffs' land from the south at a point near the southeast corner and extended northward leaving the land through the north line, and from there flowed on northward and prior to 1950 and 1951 emptied into the Elkhorn River; that no part of plaintiffs' land is within the Stanton-Pilger Drainage District except the northwest 40 acres which 40 acres are not involved in

the matters to which this action relates; that in 1950 and 1951 the defendant, a duly and regularly organized drainage district, constructed a channel, referred to as a pilot channel, across the body of land within one of the loops for the passage of water which otherwise would have run through the old river channel; that this cut across the channel of Cedar Creek and caused the water from Cedar Creek to empty into this channel rather than into the old channel of the Elkhorn River; that the base or bottom of this pilot channel was several feet below the base or bottom of Cedar Creek and of the Elkhorn River; that this brought about a drop or waterfall where the water from Cedar Creek emptied into the channel; that the condition thus created by the defendant caused the channel of the creek to erode upstream in Cedar Creek thus deepening and widening the creek; that the defendant was notified of the erosion but took no steps to prevent it; that the erosion has continued until it has reached to and into the portion of the creek within plaintiffs' land where it has caused and will continue to cause irreparable damage to plaintiffs' land, the use thereof, and the buildings and structures thereon; and that there are means and methods whereby the defendant could have prevented the damage and injury which has ensued and which if employed can prevent further damage and injury, which means the defendant has failed to employ although it has had notice and knowledge of the condition which exists and its probable future consequences.

There is no substantial contention that the defendant lacked power and right to construct the channel as it did, but only that injunction is available to plaintiffs to protect them against further injury and damage in view of the fact that protective measures are reasonably available, and that the plaintiffs are entitled to recover damages for the injuries already sustained.

The plaintiffs alleged that they made attempts to protect against the condition and the consequences there-

of of which they complain and in connection therewith they have alleged damages in the amount of $11,377. They have alleged damage occasioned by the cost of repairs in the amount of $1,611.25. They have also alleged damage to land and business operations in the amount of $45,000. The total of these is $57,988.25.

The prayer is for a mandatory injunction requiring the defendant to do that which is necessary to protect the land and improvements thereon from further damage, and for a judgment for the amount of the damage already sustained.

As pointed out, the action was dismissed at the close of plaintiffs' evidence. Under these circumstances the record must be considered in the light of whether or not a cause of action for the relief prayed has been proved. For this purpose the court must accept as true the evidence of the plaintiff and any reasonable conclusions deducible from it. In Adams v. Adams, 156 Neb. 778, 58 N. W. 2d 172, it was said: "If a defendant in a suit in equity moves at the close of the evidence of the plaintiff for a dismissal of the suit for want of proof to support a judgment, he admits the truth of the evidence and any reasonable conclusions deducible from it." See, also, Paul v. McGahan, 152 Neb. 578, 42 N. W. 2d 172; Busteed v. Sheffield, 153 Neb. 253, 44 N. W. 2d 471. Of course the evidence must be in proof of the subject matter in an action which the plaintiff has the right to maintain.

The cause of action as pleaded by the plaintiffs was sustained by the evidence. This has already been pointed out. That is to say that they have proved the acts charged against the defendant and that they were thereby damaged. The defendant however contends substantially that no right to injunctive relief may flow therefrom to the plaintiffs. It contends further that if the plaintiffs ever had any right in the premises such rights were for the recovery of damages in an action at law. It contends however if the plaintiffs ever had a

right of action at law for damages that action has been barred by the provisions of section 31-451, R. R. S. 1943. By the terms of this statutory provision an action for damages against a drainage district organized under the laws of Nebraska arising out of the construction, operation, or maintenance of any of the ditches, embankments, or other works of improvement of the district may not be maintained unless actual notice in writing, describing fully the cause of damage, the nature of the injury complained of, and the time and place where the damage occurred shall have been filed with the secretary of the board of directors within 30 days after the occurrence of the injury. There is an exception to this which has no significance in this case. There is no evidence that the notice specified in the provision was given.

In defense against the prosecution of plaintiffs' claim for damages in this action the defendant, as pointed out, urges that the plaintiffs have no right of action in equity, hence a trial of that portion of the pleaded cause of action may not be tried in this action in equity but should, if such a right of action exists, be tried to a jury.

In proper sequence the first question for consideration is that of whether or not the plaintiffs have on the pleadings and proof any right to the equitable relief which they seek. The answer to the question must be resolved in favor of the plaintiffs.

In Roe v. Howard County, 75 Neb. 448, 106 N. W. 587, 5 L. R. A. N. S. 831, which was an action for mandatory injunctive relief and for damages, it was said: "Where water, be it surface water, the result of rain or snow, or the water of springs, flows in a well-defined course, be it ditch or swale or draw in its primitive condition, and seeks its discharge in a neighboring stream, its flow cannot be arrested or interfered with by a landowner to the injury of the neighboring proprietors, and what a private proprietor may not do neither can

the public authorities, except in the exercise of the right of eminent domain." Injunctive relief was granted and damages were also awarded. This statement was approved in Purdy v. County of Madison, 156 Neb. 212, 55 N. W. 2d 617, in which mandatory relief was granted by this court. See, also, County of Scotts Bluff v. Hartwig, 160 Neb. 823, 71 N. W. 2d 507.

The facts in these cases were different from those in the case at bar but it may not well be said that they called for the application of principles different from those which are controlling herein. They do however have application to the rights and liabilities in instances where there has been interference with the natural flow of waters. It must be said therefore that the plaintiffs stated a cause of action which if sustained by evidence would entitle them to mandatory injunctive relief. It must be said further that the evidence adduced was prima facie sufficient as proof of the right to such relief.

The next question for consideration is that of whether or not the plaintiffs' right of action for damages was barred by the failure to give the notice provided for by section 31-451, R. R. S. 1943. The answer to this question must also be resolved against the defendant. This court said in Bridge v. City of Lincoln, 138 Neb. 461, 293 N. W. 375, in which case the validity of a charter provision requiring notice as a condition precedent to the right to recover damages was brought into question, by quotation from Livingston v. County Commissioners of Johnson County, 42 Neb. 277, 60 N. W. 555: " 'To give section 21 of article 1 of the Constitution full effect it is necessary that a corporation which proposes to appropriate private property for public use shall take such steps as may be necessary to determine the amount of damages resulting from such appropriation and provide payment therefor. This duty should be in no way dependent upon whether or not a claim for

damages has been filed by the person whose property is to be taken.' "

Further in the opinion it is said: "An unliquidated claim, as used in the charter provision, does not include a claim for compensation for the taking or damaging of private property for public use. It follows that, in an action to recover compensation for the taking or damaging of private property for a public use, based upon the constitutional provision, it is not necessary for the plaintiff to plead or prove that she filed a claim therefor with the defendant city as provided by the charter."

Article I, section 21, of the Constitution of Nebraska, is as follows: "The property of no person shall be taken or damaged for public use without just compensation therefor."

In Quest v. East Omaha Drainage Dist., 155 Neb. 538, 52 N. W. 2d 417, this court said: "In an action for damages based upon Article I, section 21, of the Constitution of Nebraska and against a drainage district organized under the provisions of Chapter 31, article 4, R. S. 1943, for the damaging of private property for a public use, it is not necessary for plaintiff to plead or prove that he filed a notice as provided by section 31-451, R. S. 1943." This statement was approved in McGree v. Stanton-Pilger Drainage Dist., 164 Neb. 552, 82 N. W. 2d 798. The action here is by facts alleged based upon Article I, section 21, of the Constitution of Nebraska.

In McGree v. Stanton-Pilger Drainage Dist., *supra*, it is made clear that in a situation where property outside the boundaries of the district is taken or damaged liability attaches for violation of Article I, section 21, of the Constitution, and that the notice exacted by section 31-451, R. R. S. 1943, is not necessary. In that case it was said: "When land is taken outside the boundaries of the right-of-way condemned, it constitutes a second taking of private property for a public

use and liability attaches therefor under Article I, section 21, of the Constitution."

The conclusion reached is that the plaintiffs were entitled to maintain their action in damages and that the evidence adduced by them was sufficient prima facie to sustain a recovery.

The remaining question to be considered is that of whether or not the plaintiffs had the right to join in one and the same action their cause of action for equitable relief and the one for damages. This question like the other two must be answered favorably to the plaintiffs.

The case of Brchan v. The Crete Mills, 155 Neb. 505, 52 N. W. 2d 333, is one wherein this court reviewed many cases from this and other jurisdictions on the question of whether or not an action for damages could properly be joined with one for equitable relief, the right to both flowing from the same act or acts. It was there held that they could be so joined. In the opinion the following was quoted with approval from Schreiner v. Witte, 143 Neb. 109, 8 N. W. 2d 831: " 'It is a well-settled principle of equity jurisprudence that, where a court of equity has obtained jurisdiction of a cause for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation.' "

The applicable rule in the light of the conclusions reached herein is stated in Paul v. McGahan, *supra,* as follows: "Where it appears that such dismissal of a plaintiff's cause of action was erroneous, the parties are entitled to be placed in the same position they were in before the error occurred, which requires the cause to be remanded for a new trial."

The decree of the district court is accordingly reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.