## EDWARDS v. DARGAN.

1. This court concurred with referee and Circuit Judge in finding as facts that there had been no new contract or alteration of the old one. This being so, there was no discharge of the surety. Mere indulgence to the principal does not release the surety.
2. An open account, secured by bill of sale of a chattel, does not bear interest in favor of the original debtor, nor of his assignee who purchased it at the debtor's request.
3. Finding of fact by referee and Circuit Judge affirmed.
4. An action to foreclose a chattel mortgage may be maintained against a senior mortgagee in possession of the chattel, where it is of a greater value than the senior mortgage debt; but in such a case no personal money judgment can be entered against the defendant, for he is not the debtor.

Before HUDSON, J., Darlington, March, 1888.

The opinion makes a full statement of the case.

*Messrs. Dargan & Dargan,* for appellant.

*Mr. A. M. Rankin,* contra.

February 23, 1889. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. It appears that one Frank Jackson, with one Hubbard Dargan as his surety, some time in 1880, executed a bill of sale or mortgage covering one or two horses, a wagon, and some other personalty, to Philip Kalmus, the object being to secure a debt of Jackson's to Kalmus for advances in moneys, provisions, and supplies, amounting to $250. This debt having been reduced to $66.96, was taken up or purchased by the plaintiff, with the mortgage, in July, 1881, which mortgage was then assigned to the plaintiff. The property embraced in the mortgage, or a portion of it, afterwards went into the possession of the defendant, Dargan, who, it is alleged, disposed of some of it to the defendant, McIver (Hubbard Dargan having died in the meantime). It seems that at the time the defendant, W. E. Dargan, took possession of this property, he held a mortgage on the same, given to him by the said Hubbard

Dargan, but of junior date to the Kalmus mortgage assigned to the plaintiff, as stated above. He also held a mortgage from the said Hubbard Dargan of same property for which he paid $20, older that the Kalmus mortgage, or bill of sale, as it is called.

Under these circumstances Edwards, respondent here, not finding any other property covered by his mortgage, except that in possession of defendants, brought the action below, alleging in his complaint substantially the facts as stated above, upon which he demanded judgment : 1. For the delivery of the property. 2. For the establishment of a lien thereon, and for the payment of the amount, with interest. 3. For the payment of $66.96, with interest, costs, and damages by the defendant to the plaintiff. And, 4. For the sale of the said property and payment of the amount due, with interest, costs, and damages, and for such other relief as might seem meet to the court. The defendant, Dargan, answered, admitting that he had taken possession of a gray mare of Hubbard Dargan, deceased, under a bill of sale to him, superior to that of the plaintiff. 2nd. That plaintiff's debt had been paid, as he was informed and believed. 3rd. That Hubbard Dargan was merely surety to Jackson, and that the plaintiff, by his dealings with Jackson, and by new contracts with him, had released and discharged Hubbard Dargan as such surety, and he prayed a dismissal of the complaint.

The case was referred to Mr. J. J. Ward to hear all issues and report conclusions to the court. This report came in afterwards, and was as follows :

### "Report of Referee.

"On the 13th day of November, 1884, the case above stated was referred to me to hear all the issues in said case and report my conclusions to the court by his honor, I. D. Witherspoon, presiding judge.

"The following is a summary of the testimony : On the 10th of January, 1880, P. Kalmus sold to Frank Jackson a horse, that Kalmus took a bill of sale of, which operated as a mortgage on the horse, and that as further security Hubbard Dargan signed the bill of sale with Frank Jackson, including his personal property, consisting of one iron-gray mare, one cream col-

ored mare, a two horse wagon, and one rockaway; that at the time of this transaction, and for many years previous, Frank Jackson was a tenant on land of the plaintiff; that the bill of sale called for two hundred and fifty dollars advanced in money and supplies; that during the fall of 1880 Jackson paid his account to Kalmus down to sixty-six 96-100 dollars; that at the request of Frank Jackson on July 4, 1881, Col. Edwards paid the sixty six 96-100 dollars, and had the bill of sale transferred to him; that during the year 1881 the plaintiff stood security for Jackson to get his year's advances from Edwards & Norment, which Jackson paid, save about $13; that in the years 1882 and 1883 plaintiff advanced to Jackson himself, but Jackson failed to pay him up either year; that the amount paid by plaintiff was not included in his account against Jackson. Hubbard Dargan died the last of the year 1883; that there was no request by Hubbard Dargan to proceed against the principal; that subsequent to giving the bill of sale by Jackson and Hubbard Dargan to Kalmus, Hubbard Dargan gave a bill of sale on the same property to W. E. Dargan, who, after the death of Hubbard Dargan, took the same into his possession, keeping one of the horses and disposing of the remaining property, or what was left of it; that before W. E. Dargan took possession a great deal of the property covered by the bill of sale was worn out and destroyed— two horses and a buggy was all that W. E. Dargan took possession of; he took possession of property after actual notice of Edwards' claim, Frank Jackson being insolvent.

"The question for decision was whether B. W. Edwards, by his conduct, released the security. Making the test applied by the law, as to what will release a surety, we cannot see that B. W. Edwards has done more than indulge Jackson, the fact being that the horse of Jackson died very soon after Edwards bought the bill of sale. There is a further fact that Mr. W. E. Dargan bought of Kalmus a bill of sale against Hubbard Dargan, for which he paid $20, older than Edwards' bill of sale, which is still unpaid. But the referee holds that in value the property that Mr. Dargan took into his possession, covered by Kalmus' bill of sale, and this one also, was sufficient in value to pay both bills of sale; therefore,

"It is adjudged, that the plaintiff have judgment against the defendant, W. E. Dargan, in the sum of ninety-two dollars and eight cents, and the costs of this action.

                "Respectfully submitted,

                        "J. J. WARD, Referee.

"Nov. 14, 1887."

To this report numerous exceptions were filed, which, coming up before his honor, Judge Hudson, the decree, of which the following is a copy, was pronounced :

                "JUDGMENT OF COURT.

"Upon exceptions to the foregoing report, the cause came on to be heard before me March 10, 1888. I concur with the special referee in his judgment as to the liability of W. E. Dargan to account to B. W. Edwards for the amount of the account sued on, but not as to interest. The argument in behalf of Edwards is that it is an account stated, but there is no evidence of this. B. W. Edwards merely purchased an open merchant's account, secured by a chattel mortgage. There is nothing in the mortgage of a nature so definite as to make unpaid-for advances an interest bearing balance. The mortgagee suing for the balance of this mercantile account could not recover interest, nor can his assignee. In seizing the chattels W. E. Dargan committed no trespass, because he held a superior chattel mortgage on which a balance of twenty dollars was due. But at the time of seizure he knew full well of Edwards' claim. He knew it before he received the chattels and converted them. He was wrong, therefore, in failing and refusing to pay Edwards the account which he held as assignee, after satisfying his own small demand, a non-interest bearing demand, however. B. W. Edwards has been delayed in collecting an undisputed open account, it is true, but this does not of itself entitle him to interest. There is no evidence of the special damage for which a jury might compensate him by way of interest. None proved, none allowed by the referee, who seems to have regarded the account as stated, and hence as interest bearing, so I gather from the argument of counsel. The referee is silent on this point.

"It is therefore adjudged and decreed, that the report of the referee be confirmed, except as to interest, in which respect he is overruled. And it is ordered, adjudged, and decreed, that the plaintiff, B. W. Edwards, do recover of the defendant, W. E. Dargan, the sum of sixty-six dollars and ninety-six cents and the costs of this action, for all which he has leave to enter up judgment and issue execution. It is further adjudged, that the said Edwards has a special lien by chattel mortgage on that property in defendant's hands embraced in the mortgage, subject to be sold to satisfy this judgment; and that if this debt and costs are not paid in thirty days from the date hereof, the sheriff do sell the same, pay this debt and costs and expenses, and account to defendant for the surplus, if any.

"J. H. HUDSON,

"Presiding Judge."

The defendant now appeals from this decree upon the exceptions annexed. The plaintiff also appealed as to the denial of interest to him.

"GROUNDS OF APPEAL.—1. Because the plaintiff, having taken up the bill of sale of Frank Jackson and Hubbard Dargan to Philip Kalmus, at request of Frank Jackson, without the knowledge or consent of the surety, Hubbard Dargan, and afterwards having made a new contract with Frank Jackson, to which the surety was not a party, thereby released said surety from the original contract given to secure an open account without interest, and his honor should have so held.

"2. Because the alteration of the original contract, either in the rate of interest or otherwise, and the indulgence, new contract, and extension of time to said Jackson by the plaintiff, were positive acts which released the surety, Hubbard Dargan, from all liability as such, and his honor should have so held.

"3. Because it was error in his honor to sustain the referee in his holding by implication that it was necessary for Hubbard Dargan, in order to be discharged as surety, to demand of his creditor that he exhaust the property of his principal, Frank Jackson.

"4. Because it was error in his honor to hold that the $20 paid

by W. E. Dargan at request of Hubbard Dargan to Philip Kalmus for the bill of sale of Hubbard Dargan did not draw interest.

"5. Because it was error in his honor to sustain the referee in his finding that the property of Hubbard Dargan, which passed into the possession of the defendant, W. E. Dargan, was sufficient to pay both the bill of sale of the plaintiff and of the said defendant.

"6. Because it was error in his honor to sustain the referee in his finding that Jackson's horse died soon after plaintiff bought the bill of sale from Philip Kalmus; and that Jackson was insolvent.

"7. Because his honor erred in giving judgment against the defendant, W. E. Dargan, in any amount.

"8. Because, from the undisputed testimony of Frank Jackson and Joseph Rosenberg, the plaintiff could have made his money out of the property of Frank Jackson on several different occasions, and did not do so for his own benefit and on account of the new contract between plaintiff and the said Jackson, and his honor should have so held."

The plaintiff filed the following notice of appeal within the time prescribed by law:

"NOTICE OF APPEAL.—Take notice that the plaintiff appeals to the Supreme Court from so much of the judgment of the Circuit Judge in this case as denies to the plaintiff interest on the amount of his claim or damages for the unlawful withholding of the mortgaged property."

The first two of defendant's exceptions raise the point that Hubbard Dargan, being surety only, was released and discharged by a new contract made between Edwards and Jackson, or by an alteration thereof, as to the interest. This involves a question of fact and of law both; the fact, which precedes the law, being whether there had been either an alteration or a new contract. The referee found as matter of fact that Edwards had done nothing more than indulge Jackson, in which we suppose the Circuit Judge concurred, and which we do not find entirely unsustained by the evidence, or with the great preponderance against it. We therefore assume that to be one of the facts of the case. This

being so, there was no error in holding that Hubbard Dargan was not released or discharged thereby, as it will not be contended that indulgence simply of one's debtor, principal, will discharge his surety.

As to the third exception. We do not see that his honor made any ruling on the matter there suggested. The referee stated as a fact that Hubbard Dargan had never requested Edwards to proceed against Jackson, the principal. This was all. He did not report that this was necessary to Hubbard's release, nor did the Circuit Judge so hold, either directly or by implication, so far as we can discover.

As to 4th. The $20 claimed by Dargan, defendant, was not made to appear to be an interest bearing demand. And we may here say the same as to the claim of Edwards, the plaintiff. They were both in the nature of open accounts, which do not bear interest.

The 5th involves a question of fact, with no reason to overrule the finding below.

The 6th is wholly unimportant, and could not affect the decree, whether true or not.

The 8th is disposed of above in the finding that there was no new contract, and that the indulgence given Jackson by plaintiff could not release Dargan, the surety.

The 7th has substance. It alleges error to the Circuit Judge in giving judgment against the defendant, W. E. Dargan, for any amount. The action below was, in substance, an action to foreclose plaintiff's mortgage on property in the possession of defendant, claiming to hold under both a senior and junior mortgage. Now, while no doubt plaintiff had the right to claim a foreclosure, inasmuch as said property was found by the referee as of sufficient value to pay both mortgage debts, that is, the older mortgage of defendant and the mortgage of the plaintiff, yet we do not see the foundation of a personal claim in favor of plaintiff against defendant. As far as we can see, the defendant was not personally indebted to plaintiff, either by contract, or in other way. We, therefore, think it was error in the Circuit Judge to adjudge a recovery of $66.96 to the plaintiff against defendant,

with leave to enter judgment thereon.    But in other respects the judgment below should be affirmed.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, except as to the personal judgment against the defendant, which is reversed.    This modifies the judgment below.